Robert L. HAWKINS, Plaintiff,

v.

Philip E. STEWARD; Dennis J. White; Ken Nixon; David Plasters, ind. and as Deputy District Atty. for 19th Judicial District and Weld Co., CO; Ed Jordan, ind. and as Sargeant for Sheriff Dept. of Weld Co., CO; K. Fleithman, ind. and as Sergeant for Sheriff Dept. of Weld Co., CO; Patrick L. Craig; Robert Reichert; Lawrence S. Merdes, ind. and as Deputy District Atty. for 20th Judicial District and Boulder Co., CO; James R. Galusha and Linda Lewellen, ind. and as Police Officers for City of Longmont, CO; Lynn Schott, ind. and as Animal Control Officer of Police Dept. of City of Longmont, CO; and Richard Roe and Joe Doe, unknown sheriff's deputies of Weld County and unknown Police Officers of City of Longmont, CO, Defendants.

Civ. A. No. 84–K–413.

United States District Court, D. Colorado.

Feb. 17, 1987.

Robert S. Berger, Lakewood, Colo., for plaintiff.

Michelle Holland, Zarlengo, Mott, Zarlengo and Winbourn, Denver, Colo., for Steward and White and Craig.

Carol M. Welch, Hall & Evans, Denver, Colo., for Nixon, Galusha, Lewellen & Schott.

Thomas O. David, Weld County Atty., Greeley, Colo., for Plasters, Jordan & Fleithman.

Don D. Jacobson, Jacobson & Morrell, Denver, Colo., for Reichert.

Christina M. Habas, Watson, Nathan & Bremer, P.C., Denver, Colo., for Merdes.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff, Robert Hawkins, brings this civil rights action pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1343. Plaintiff alleges defendants conspired to subject him to unreasonable searches and seizures and to take and interfere with his property rights without due process of law in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Co-defendant, Lawrence Merdes, a Deputy District Attorney in Boulder, Colorado, has filed a motion for summary judgment on his behalf and an award of attorney fees pursuant to 42 U.S.C. § 1988.

Defendant argues his involvement with plaintiff was undertaken pursuant to his statutory duties as a deputy district attorney, and is therefore entitled to absolute immunity. In the alternative, defendant

argues he is entitled to qualified immunity because he was performing discretionary actions which did not violate clearly established statutory or constitutional rights which a reasonable person would have known.

Plaintiff contends defendant acted outside the scope of his duties and therefore is not entitled to absolute immunity. Although he argues against absolute immunity, plaintiff agrees defendant is entitled to assert the defense of qualified immunity. Plaintiff maintains, however, that defendant is not entitled to summary judgment since there is sufficient evidence to raise a factual question concerning defendant's intentions in performing his acts.

# I.

## BACKGROUND

On May 24, 1985, a leopard named "Chewie", owned by plaintiff, escaped from its confinement in the basement of plaintiff's home in Longmont, Colorado. During efforts to recapture the leopard, the leopard attacked and bit Officer Linda Llewelyn of the Longmont Police Department. Defendant was notified of the incident by Longmont police officers. He was informed police agents had obtained evidence suggesting the leopard had been fed a diet which included meat, skin, and flesh of various animals which were potential rabies carriers.

Upon receipt of this information, defendant commissioned the Wildlife Laboratories in Fort Collins, Colorado, to examine and report upon the status of the fecal materials, hair, and cat litter, which were taken from plaintiff's home. Wildlife Laboratories reported the leopard had been exposed to potential rabies carriers, i.e., skunk and dog. Defendant reported Wildlife's findings to Dr. John Emerson, a public health veterinarian employed by the Colorado Department of Health. According to plaintiff, this action on the part of defendant

violated plaintiff's constitutional property rights to "Chewie."

Dr. Emerson decided to subject the leopard to a six-month quarantine pursuant to Colo.Rev.Stat. § 25–4–604 (1973) based on Wildlife Laboratories' findings and the Compendium of Animal Rabies Vaccines, 1985, prepared by the National Association of State Public Health Veterinarians, Inc. Dr. Emerson based the six-month quarantine period on his determination that the incubation period of rabies in a carnivorous animal may be as long as six months.[1]

# II.

## ABSOLUTE IMMUNITY

The question presented in this case is whether the acts of defendant were within the scope of his duties thus entitling him to absolute or qualified immunity from plaintiff's civil rights action. I find defendant acted pursuant to statutory authority in commissioning Wildlife Laboratories to conduct an examination and forwarding Wildlife's findings to the Colorado Department of Health.

Defendant, as a deputy district attorney, is statutorily charged with guarding the public health and welfare of his constituency. See Colo.Rev.Stat. § 25–1–112 (1973), infra n. 2. After being informed an escaped leopard had attacked and bitten a person, and after receiving information that the leopard might be a possible rabies carrier, defendant communicated this information to the Colorado Department of Health. Defendant is now forced to defend the allegation that such acts should expose him to liability and are to be deemed outside the scope of his official duties as a deputy district attorney.

In determining whether a district attorney was entitled to absolute immunity, as opposed to simply qualified immunity, in a § 1983 context, the United States Supreme Court, in *Imbler v. Pachtman*, 424 U.S.

---

**1.** Dr. Emerson has been dismissed pursuant to a summary judgment motion. He was granted immunity because his actions were taken in the scope of his authority from the Colorado Department of Health.

409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), stated:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.... Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the ... law.
>
> Moreover, suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor.

*Id.* at 424–25, 96 S.Ct. at 992–93.

Applying the considerations of the *Imbler* court to the instant case, because defendant was acting in his official quasi-judicial capacity, he must be entitled to absolute immunity in order to allow his energies to be directed towards the performance of his duties, instead of defending this action.

It was the sole decision of Dr. Emerson, Public Health Veterinarian for the Colorado Department of Health, to extend the quarantine period of plaintiff's "pet leopard." Dr. Emerson based his decision on Wild Life Laboratories' report and the recommendations from the Compendium of Animal Rabies Vaccines, 1985. Further, the decision to quarantine the animal suspected of being a rabies carrier occurres before the dismissing of the criminal charges against plaintiff for alleged mistreatment of his pet leopard. These facts indicate: (1) defendant was not directly responsible for the extended quarantine period; (2) the Wildlife report he made available to Dr. Emerson was not solely determinative of the quarantine period; and, (3) defendant's forwarding Wildlife's report was a part of the investigative and administrative functions of defendant's duties in the pending criminal case against plaintiff. As the U.S. Supreme Court has stated, "[a]t some point, as with respect to some decisions, the prosecutor no doubt functions as an administrator rather than an officer of the Court." *Imbler, supra,* 424 U.S. at 431, 96 S.Ct. at 995.

Additionally, Colo.Rev.Stat. § 25–4–602 (1973) requires "any person having knowledge" of an animal suspected of being affected by rabies, "or has been bitten by an animal known or suspected to be affected by rabies ... shall forthwith notify the health department or health officer in the county, city, or town in which such animal is located." Moreover, Colo.Rev.Stat. § 25–1–112 (1973) directs district attorneys to abate any violative public health condition, restrain any such action, prosecute any such violation, and enforce the laws of the Department of Health.[2] By supplying the Health Department with Wildlife's report, defendant did not act outside the scope of his duties. Simply because the Executive Director of the department had not formally requested such a report is neither probative nor determinative.

The intent and purpose behind Colorado's statutory health laws, as applied to the instant case, required defendant to inform the Department of Health concerning the potential that the leopard may be a rabies carrier. It must be remembered the objectives of Colo.Rev.Stat. §§ 25–4–602 and 25–

---

**2.** Colo.Rev.Stat. § 25–1–112 (1973) states:

... The District Attorney of the judicial district in which a cause of action may arise shall bring any action, civil or criminal, requested by the executive director of the department to abate a condition which exists in violation of, or to restrain or enjoin any action which is in violation of, or to prosecute for the violation of or for the enforcement of public health laws or the standards, orders, rules, and regulations of the department established by or issued under the provisions of this part 1. If the district attorney fails to act, the executive director may bring any such action and shall be represented by the attorney general or, with the approval of the board, by special counsel.

1–112 (1973) are the promotion of Colorado's public health laws and the protection of the public from such dangers as the spread of rabies. Indeed, had defendant failed to provide the Colorado Department of Health with the Wildlife report, the Department of Health may have released the leopard prematurely. Had the leopard been released prematurely, both defendant and the Department of Health would be justly criticized for failure to follow established quarantine procedures for such animals, pursuant to a district attorney's duties and the Compendium of Animal Rabies Vaccines, 1985.

## III.

### CONCLUSION

Given the alleged facts of this case, and taking them as true, defendant's acts as a deputy district attorney were within the scope of his quasi-judicial duties. Thus, defendant is entitled to absolute immunity. Accordingly, I find defendant is entitled to judgment as a matter of law since there is no genuine issue as to any material fact.

IT IS THEREFORE ORDERED:

1) Defendant's Motion for Summary Judgment is granted.

2) Defendant's request for an award of attorney fees is denied. No argument was made in support thereof.

### JUDGMENT

PURSUANT TO and in accordance with the Memorandum Opinion and Order entered February 17, 1987, by The Honorable John L. Kane, Jr., United States District Judge, it is

ORDERED that judgment is entered in favor of the defendant, Lawrence Merdes, and against the plaintiff, Robert L. Hawkins, and the complaint is dismissed as to this defendant only. It is

FURTHER ORDERED that defendant is awarded his costs upon the filing of a bill of costs with the Clerk within ten (10) days of the entry of judgment.